## WELCOME NATIONAL BANK OF WELCOME v. E. W. HALKNEY.[1]

November 29, 1935.

No. 30,563.

[1]Reported in 263 N. W. 544.

*De Forrest Ward, Paul C. Cooper,* and *Frundt & Morse,* for appellant.

*Leo J. Seifert,* for respondent.

STONE, JUSTICE.

Action by the payee and holder of a promissory note against the indorser. The latter admitted liability but interposed two counterclaims on which he prevailed through a verdict on special issues and findings of fact by the trial judge on additional matters. Plaintiff appeals from the order denying its blended motion for judgment notwithstanding the verdict and findings or a new trial.

1. The first counterclaim was in substance this: During 1927 a farm belonging to plaintiff was operated by one Olson, not as an employe but as a tenant, the rent payable in cash. During that year Olson operated another farm not owned by plaintiff. That fall he sold defendant 2,500 bushels of corn at 65 cents per bushel, the purchase price being $1,625. Before any of the corn was delivered, defendant paid Olson $1,500 on account. Olson delivered only 1,140 bushels. Defendant's claim is that plaintiff was seller of

the corn, and hence is liable for breach of the contract of sale. Whether plaintiff rather than Olson had sold the corn was a special issue submitted to the jury, and their answer was in the affirmative. That special verdict, adopted by the court, resulted in an order for judgment for defendant in the sum of $749 with interest, as the amount of defendant's damage because of the seller's breach of contract.

The fatal difficulty with the counterclaim is that the record is barren of proof that plaintiff had any interest, as owner or otherwise, in the corn, or that it participated in the sale otherwise than as adviser to Olson. Plaintiff did not even have a lien on the corn or any part of it. Defendant paid Olson rather than plaintiff. His $1,500 check was payable to Olson, who immediately deposited it to his own credit with plaintiff bank. All the bank got out of it was the cash rent of the farm upon which the corn was raised.

There was testimony from Olson that Mr. Wolford, representing the bank, was consulted about selling the corn and first advised him to "wait." Later the banker was asked by Olson (according to his testimony) : "Do you want me to shell the corn or do you want me to sell it to Halkney?" The reply, according to the testimony, was "sell it to Halkney." Then or later, Mr. Olson was admonished by Mr. Wolford to "be sure to keep enough corn for them hogs." The owner of "them hogs" is not identified by any evidence.

The claim for defendant is not predicated upon any idea of apparent, as distinguished from an actual, agency. Either there was actual authority, or there was none. We are constrained to the latter view. The ownership of Olson being established, to the exclusion not only of any in plaintiff, but also of any lien upon or claim to the corn in the latter, its mere advice or admonition to Olson, the substance of which is already indicated, could not in any view be held to bind plaintiff contractually. There was no expression of contractual intention by plaintiff. That aside, the language used, as quoted by Olson in his testimony, when applied to the fact of his own ownership and none in the bank, falls far short of making him agent of the bank for any purpose. Even the supposed subject matter of the alleged agency is lacking. The record has no

proof at all of the agency necessary to sustain the first counterclaim.

2. The second counterclaim is equally without support in the record. For two years or more before 1928 defendant and J. H. Larison had been engaged in some sort of joint adventure wherein defendant was financial backer of Larison in the business of buying, feeding, and selling hogs at Welcome. Larison carried an account with plaintiff bank in the name of Sarah Larison but upon which he himself seems to have drawn all checks and made all deposits. Much business was transacted through that account. It is defendant's claim that he was Larison's guarantor to the bank either that all checks on this account which plaintiff honored would be paid in due course or that any resulting overdraft would be paid; provided only that defendant should not incur liability in respect to checks not properly chargeable to the dealings of himself and Larison in swine.

The note in suit, upon which remains due upwards of $2,100, bears date of August 6, 1928. Originally for $3,508.54, payment by Larison reduced it to the amount for which plaintiff sues and for which defendant admits liability subject to his counterclaims. Previously he had indorsed many such notes of Larison running to plaintiff and deposited to the credit of the Larison account to cover. or protect against overdrafts. All except the one in suit have been paid by Larison. Defendant makes no claim of having paid any of them or anything on account of them.

July 31, 1928, Larison, with no note outstanding, had a small credit balance with plaintiff. By August 6 he had overdrawn in the sum of $254.01. That amount plus that of seven checks drawn that day aggregate $3,508.54, the exact original amount of the note in suit, which was taken pursuant to defendant's guaranty. There is not a word of evidence even suggesting that any check not covered by that guaranty went into the amount of the note. Obviously, therefore, defendant's second counterclaim fails for lack of evidence to support it.

The order appealed from is reversed.